UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMANDA BAKAY | |
| *Plaintiff* | CIVIL ACTION |
| VERSUS | NO.: 2:18-cv-5902 |
| POSIGEN, INC.; POSIGEN, LLC; POSIGEN GP, LLC; POSIGEN ENERGY EFFICIENCY OF LOUISIANA, LLC; POSIGEN OF LOUISIANA, LLC; AND TOM NEYHART | |
| *Defendants* | |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Amanda Bakay, who files this instant Complaint against Defendants, PosiGen Inc., PosiGen, LLC, PosiGen GP, LLC, PosiGen Energy Efficiency of Louisiana, LLC, PosiGen of Louisiana, LLC, and Tom Neyhart (collectively "PosiGen") and asserts as follows:

## PARTIES

1. Amanda "Amy" Bakay is a person of the age of majority residing in New Orleans, Louisiana.

2. PosiGen, Inc. is a corporation registered in Delaware that is not formally authorized to do business in Louisiana but does business in Louisiana as a result.

3. PosiGen, LLC is a limited liability company with its principal office in Jefferson Parish.

4. PosiGen GP, LLC is a limited liability company with its principal office in Jefferson Parish.

5. PosiGen Energy Efficiency of Louisiana, LLC is a limited liability company with its principal office in Jefferson Parish.

6. PosiGen of Louisiana, LLC is a limited liability company with its principal office in Jefferson Parish.

7. The PosiGen entities in paragraphs 2-6 are collectively referred to as "PosiGen" throughout.

8. Tom Neyhart is a person of the age of majority that can be found in the Parish of Jefferson.

## JURISDICTION AND VENUE

9. This Court has Federal subject matter jurisdiction pursuant to 28 U.S.C. 1331 as Count II arises from a violation of federal law.

10. There is supplemental jurisdiction over the remaining state law counts as the arise from the same set of facts.

11. Venue is proper as the wrongful actions giving rise to the causes of action occurred in the Eastern District of Louisiana.

## BACKGROUND

12. Ms. Bakay began employment in March of 2014 as the Human Resources Director of the PosiGen family of companies.

13. As a condition of employment, Ms. Bakay was promised a salary of $130,000 with a 35% bonus and three-weeks-vacation. She reported to the CEO.

14. Ms. Bakay was promoted to Senior Vice President of Human Resources, reporting to the President, and was promised a salary of $225,000 with a 35% bonus and three-weeks-vacation. She was also promised free medical and dental coverage and a forthcoming employment contract.

15. In February 2015, an employment contract was initiated by the President and the Associate General Counsel for the position of Senior Vice President of Human Resources. The "Executive Employment Agreement" is dated on or about March 23, 2015 and states Ms. Bakay was to receive a twenty-four (24) week severance package. The contract was never signed by the CEO.

16. In July 2016, Tom Neyhart informed Ms. Bakay that the leadership team would have to take a pay cut and her salary would be reduced from $225,000 to $175,000 (22%).

17. On August 8, 2016, Tom Neyhart, and CEO, initiated a salary reduction for two (2) employees, one of which was Ms. Bakay and the other was a fellow male member of the executive team, Ben Norwood. Under this salary reduction, Ms. Bakay was to receive a 22% reduction in pay while her male co-worker, Mr. Norwood, was to receive only a 5% reduction. When Ms. Bakay asked for the reason behind this discrepancy, Tom Neyhart said it was because her coworker was under an employment contract.

18. Ms. Bakay later brought forth her concerns to several members of the Board of Directors and Tom Neyhart finally agreed to a 12% reduction in pay.

19. On September 28, 2016, after several meetings with Tom Neyhart, Ben Norwood, and the Board of Directors, Ben Norwood and Ms. Bakay met with PosiGen's Executive Team and collectively agreed to a 4% pay reduction for all members.

20. Ms. Bakay's pay was then reduced to $216,000/year with a promise of the salary reduction being temporary and that PosiGgen would repay the difference in full and award her additional stock options and additional bonus once the company was deemed "financially stable".

21. Ms. Bakay spent about nine (9) weeks at a $200,000/year base rate pay.

22. Ms. Bakay's base-rate salary changed to $216,000/year in September 2016 and remained that way until her termination from PosiGen on May 18, 2017.

23. On November 23, 2016 Ms. Bakay submitted an FMLA intermittent leave ADA request for a gastrointestinal condition under a physician's recommendation to PosiGen's Human Resources Manager, Lori Knight. This was done pursuant to negative and disparaging comments made by Tom Neyhart and his spouse Lisa Neyhart, also an employee, about employees in New Orleans occasionally permitted to work remotely.

24. On December 9, 2016, Tom Neyhart wrote a memo to the executive team stating that employees may no longer work remotely, for any reason, unless expressly approved by him.

25. In January 2017, Tom Neyhart hired a male employee to work outside the state, who continuously worked remotely.

26. Numerous male executives at PosiGen actively worked remotely during Ms. Bakay's employment.

27. In February 2017, Ms. Bakay spoke to Lori Knight and Tom Neyhart to discuss recovery and leave terms for her upcoming ankle surgery to correct an injury sustained at a company-sponsored kickball game.

28. On March 14, Ms. Bakay sent an email to Tom Neyhart and Lori Knight detailing her FMLA and ADA terms. Lori Knight responded approving her requests. She received no response from Tom Neyhart.

29. In retaliation for her applying for a leave of absence and short-term disability under the FMLA, Ms. Bakay was stripped of her decision-making authority, now requiring her to get all staffing positions approved by the Chief Financial Officer, a male executive team

member living in Virginia. Additionally, others started excluding Ms. Bakay from discussions on finances and staffing.

30. Upon information and belief, Tom Neyhart forwarded Ms. Bakay's FMLA/ADA email to the Chief Financial Officer and others on the Board of Directors, calling her accommodation request from her physician to work from home temporarily "excessive." Tom Neyhart said he was considering forcing Ms. Bakay to use her personal time off, instead.

31. On April 6, 2017, the day before Ms. Bakay was to be out for her scheduled surgery, Tom Neyhart and Ms. Bakay had a phone conversation. During this conversation, Ms. Bakay expressed concerns over Tom Neyhart's humor and continued treatment of employees after receiving complaints from other employees and managers. For example, on more than one occasion, male employees were forced to dress up as women in pink aprons and heels and "serve" their colleagues as punishment for losing/or winning collections contests. Ms. Bakay told Tom Neyhart that this was inappropriate and potentially unlawful, and that he risked getting into trouble with this behavior. Tom Neyhart responded that it was all in good fun.

32. During the same phone conversation, Tom Neyhart told Ms. Bakay to take all of her paid sick leave and vacation time to recover from her surgery because he was tired of seeing her "hobble around" the office in a brace. Ms. Bakay reminded him that although she cannot physically move around, she could work from home within a few days of surgery. Tom Neyhart said he did not want her to work from home because they "do not offer remote work" and it would cause problems if other employees found out. Tom Neyhart also denied seeing Ms. Bakay's March 24 email outlining her leave request. Ms. Bakay recalled for

him countless other employees that work remotely from Houma, as well as three male executives that reside out of state. She also informed him the company had never asked an employee to take their personal time off when a doctor has stated that they could work remotely, circumstances permitted, and that it was not a financial hardship on the company.

33. Ms. Bakay spent a total time of four (4) weeks out of the office, one of which was deemed sick time and three of which she worked remotely, during which she responded to phone calls and emails from employees, provided reports, attended conference calls, and participated in the weekly Board of Director's meetings.

34. On May 18, 2017, approximately one (1) week after returning to work, Ms. Bakay was terminated by Tom Neyhart. Tom Neyhart indicated that the reason for Ms. Bakay's termination was reduction in force ("RIF"). The gender makeup of this RIF was entirely female.

35. On that day of termination, Tom Neyhart instructed Ms. Bakay to leave all items in her office, other than her personal belongings, forcing her to limp out of the office without the assistance of a borrowed medical scooter.

36. The letter of termination, dated May 18, 2017, stated that Ms. Bakay's health and dental coverage would end on June 30, 2017.

37. On May 19, 2017 Ms. Bakay submitted a final expense report for reimbursement which was then delayed.

38. Ms. Bakay has yet to receive bonuses owed to her from the years 2015 and 2016. These bonuses add up to approximately $97,000.

39. Bonuses were provided to other employees at Tom Neyhart's discretion and were not based upon any documented performance criteria or company financial performance.

40. Ms. Bakay later received a letter, dated May 23, 2017, correcting the May 18 termination letter. This letter stated that Ms. Bakay's health and dental coverage would end on May 31, 2017, leaving her mere days to secure coverage. The letter stated that PosiGen has instructed COBRA Services not to bill Ms. Bakay for the June premium. However, Ms. Bakay was unable to enroll for COBRA until she received her COBRA letter on June 15, 2017 and had to secure emergency coverage elsewhere as of June 1, 2017, as subsequent doctor's appointments and therapy were required for her recovery from surgery.

41. Despite a history of separation pay, outplacement, and other benefits during other RIFs, Ms. Bakay was offered no severance compensation whatsoever.

42. At the time, the only executive employees at PosiGen who were under an employment contract were male.

43. At the time, the only members of the executive team at PosiGen who were hired or permitted to work remotely were male members.

44. Of the eight (8) members of the executive team, three were males working remotely, two were males under contract, one male was paid heavy monthly incentives, and the remaining two individuals were females who do/did not receive any of the aforementioned benefits.

45. During the time of Ms. Bakay's employment, every senior level exit of a male employee from PosiGen included severance compensation, none of which had active employment contracts at that time.

46. The severance packages provided ranged from two (2) weeks severance pay during a reduction force, to outplacement services, to three (3) months severance.

47. During the one female senior level exit during Ms. Bakay's employment, the employee had to threaten legal action to receive severance compensation like her male counterparts.

Tom Neyhart referred to this male employee's severance compensation as a "gentleman's agreement."

48. On November 13, 2017, Ms. Bakay filed an Intake Questionnaire with the U.S. Equal Employment Opportunity Commission (EEOC), alleging discriminatory acts by her previous employer, PosiGen. Specifically, Ms. Bakay alleged discrimination based on her sex and indicated that her employed had retaliated by terminating her.

49. On March 22, 2018, the EEOC responded with a Dismissal and Notice of Rights letter, indicating no finding as to the discrimination alleged by Ms. Bakay.

50. The EEOC further indicated that Ms. Bakay had the Right to Sue within ninety (90) days of receipt of that notice, setting a deadline on or around June 20, 2018.

## COUNT I: VIOLATION OF LA. R.S. 23:332

51. All the above paragraphs are expressly incorporated as if restated herein.

52. LA. R.S. 23:332 makes it unlawful for an employer to discriminate against any person based on their sex;

53. The actions described hereinabove by PosiGen and Tom Neyhart constituted violations of La. R.S. §23:332 prohibitions on sex discrimination in employment and entitle Ms. Bakay to damages and attorneys' fees.

54. In her role as the SVP of Human Resources, Ms. Bakay constantly advised Tom Neyhart that certain behavior was inappropriate and appeared to be in violation of the law, but no changes occurred at the Company.

55. Ms. Bakay objected to the unlawful conduct and Tom Neyhart's misogynistic humor.

56. Ms. Bakay was subject to reprisal in the form of a layoff, withholding bonuses, and denying severance benefits. This reprisal only occurred because Ms. Bakay is a female who requested accommodations similar to those given to her male coworkers.

## COUNT II: VIOLATIONS OF TITLE VII

57. The preceding paragraphs are incorporated as if fully stated herein.

58. Title VII of the Civil Rights Act prohibits employment discrimination on the basis of gender identity. 42 U.S.C. § 2000e-2.

59. More particularly, "it shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

60. In order to show discrimination, the plaintiff must show that she is (1) belongs to a protected class; (2) was qualified for the job; (3) was subjected to an adverse employment action; and (4) the employer gave better treatment to a similarly-situated person outside the plaintiff's protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

61. Ms. Bakay, as a female, is a member of a protected class.

62. Ms. Bakay was qualified to work as a Senior Vice President of Human Resources at PosiGen;

63. Ms. Bakay was subjected to adverse employment related action when she was denied her ADA request to work remotely, without using her paid-time-off, and then terminated based on an arbitrary RIF without a severance package.

64. Male employees of PosiGen were allowed to work remotely and were provided with severance packages, if terminated.

## DAMAGES

1. Under La. R.S. § 23:631 *et seq.*, Ms. Bakay is entitled to back wages and bonuses.

2. Under La. C.C. art. 2749, Ms. Bakay is entitled to full pay through May 18, 2017.

3. Ms. Bakay is entitled to penalties for unpaid wages given that she has sent a demand for the same.

4. This reprisal has harmed Ms. Bakay in the form of lost income and lost potential income;

5. Ms. Bakay suffered emotional distress and mental anguish as well as financial harm.

6. Ms. Bakay is entitled to severance compensation, bonuses, back wages, and damages.

## JURY DEMAND

65. For any and all claims subject to the same, a trial by jury is requested.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner prays that after due proceedings be had, there be judgment in her favor:

a. Against PosiGen for wages and bonuses owed through May 18, 2017;

b. Against Tom Neyhart and PosiGen for intentional infliction of emotional distress;

c. Against Tom Neyhart and PosiGen for Louisiana Employment Discrimination;

d. Any and all other claims that the facts above justify;

e. Attorneys' fees and court costs;

f. Legal interest;

g. Any other claims that may be equitable;

**Respectfully submitted:**

/s/ Sarah M. Kalis
Galen M. Hair, LSBA No. 32865
David P. Vicknair, LSBA No. 34135
Sarah M. Kalis, LSBA No. 37186

                                                        Kassie L. Richbourg, LSBA No. 37521
                                                        **Scott Vicknair Hair & Checki LLC**
                                                        909 Poydras Street, Suite 1100
                                                        New Orleans, LA 70112
                                                        Telephone:    (504) 684-5200
                                                        Facsimile:     (504) 613-6351
                                                        *Counsel for Amanda Bakay*

**PLEASE SERVE:**

**PosiGen, Inc.**
Through the Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**PosiGen, LLC**
Through its registered agent for service of process:
Benjamin Norwood
819 Central Ave., Suite 210
Jefferson, LA 70121-1359

**PosiGen GP, LLC**
Through its registered agent for service of process:
Kimm Freeman
819 Central Ave., Suite 210
Jefferson, LA 70121-1359

**PosiGen Energy Efficiency of Louisiana, LLC**
Through its registered agent for service of process:
Thomas Neyhart
2424 Edenborn Ave., Ste. 550
Metairie, LA 70001

**PosiGen of Louisiana, LLC**
Through its registered agent for service of process:
Thomas Neyhart
819 Central Ave., Suite 210
Jefferson, LA 70121-1359

**Tom Neyhart – PERSONAL ONLY**
819 Central Ave., Suite 210
Jefferson, LA 70121-1359